IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
James R. DUCHEMIN, Attorney at Law:

LAWYER REGULATION SYSTEM OF the STATE OF WISCON-
SIN, by Ronald R. Smith, Special Investigator,
Complainant-Appellant,

v.

James R. DUCHEMIN, Respondent-Respondent.

Supreme Court

*No. 01–2227–D. Oral argument January 23, 2003.—Decided March 20, 2003.*

2003 WI 19

(Also reported in 658 N.W.2d 81.)

For the complainant-appellant there were briefs by *Paul W. Schwarzenbart,* Madison, and oral argument by *Paul W. Schwarzenbart.*

For the respondent-respondent there was a brief by *Webster A. Hart, Stephanie L. Finn* and *Herrick, Hart, Duchemin, Spaeth, Sullivan & Schumacher, S.C.,* Eau Claire, and oral argument by *Webster A. Hart.*

¶ 1. PER CURIAM. The Lawyer Regulation System (LRS) appeals from the referee's findings of fact and conclusions of law entered following a hearing held on the LRS complaint filed with this court on August 21, 2001, against Attorney James R. Duchemin.[1] That complaint alleged that Attorney Duchemin had violated

---

[1] At the time of the events involved in this matter, the respondent, Attorney James R. Duchemin, was a member of the District 8 Professional Responsibility Committee. Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation and the supreme court rules applicable to the Lawyer Regulation System were also revised. Because Attorney Duchemin was a lawyer regulation system participant, the grievance filed against him in this matter was referred to a special investigator pursuant to SCR 22.25(1). The special investigator subsequently submitted his report to the special preliminary review

13

SCR 20:1.6 by revealing to an acquaintance, Jill Johnson, the fact that Johnson's daughter, Jennifer Mayer, had contacted him about possibly retaining him to represent her (Jennifer Mayer) in a divorce action. The LRS asserted that Mayer had not expressly authorized Attorney Duchemin to disclose that information to Johnson or to discuss with Johnson the circumstances surrounding gifts or loans of money by Johnson to Mayer and her husband. Furthermore, the LRS asserted that the disclosures made by Attorney Duchemin were not impliedly authorized as necessary to carry out his possible representation of Mayer, nor were such disclosures made under circumstances listed in SCR 20:1.6.[2] The LRS asked this court to issue a private reprimand to Attorney Duchemin for his alleged violation of SCR 20:1.6.

¶ 2. Following a public hearing the referee appointed in this matter, Attorney John Fiorenza, concluded that Attorney Duchemin had not violated SCR 20:1.6; further, the referee recommended that the LRS's complaint against Attorney Duchemin be dismissed and that no costs be assessed against him. Based on the

panel established pursuant to SCR 22.25(5); that panel, pursuant to SCR 22.25(7), then determined that there was cause to proceed and the special investigator then filed a complaint against Attorney Duchemin pursuant to SCR 22.08(2) and SCR 22.11.

[2] SCR 20:1.6 prohibits lawyers from revealing information related to the representation of a client to others without client consent after consultation, or unless such disclosure is impliedly authorized or otherwise required by the rule. Specifically, SCR 20:1.6(a) provides as follows: "(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation . . . ."

undisputed facts as found by the referee, which we determine to be not clearly erroneous and which we therefore adopt, *see In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 675, 636 N.W.2d 718, we conclude that Attorney Duchemin's disclosures, which were the focus of the LRS's complaint, were impliedly authorized in order for him to carry out his then nascent representation of Jennifer Mayer. Accordingly, we adopt the referee's findings and his recommendation, we dismiss the LRS complaint against Attorney Duchemin, and we absolve him of any costs in this matter.

¶ 3.    Attorney James R. Duchemin was licensed to practice law in Wisconsin in 1970 and has never before been the subject of a disciplinary proceeding. He practices law in Eau Claire where he primarily engages in family law and divorce work.

¶ 4.    The referee heard the following testimony at a public hearing held on the LRS's disciplinary complaint against Attorney Duchemin and, based on the testimony, made several findings of fact.

¶ 5.    Attorney Duchemin frequents a public restaurant near his office. Jill Johnson has worked at that establishment for several years as a cook and she and Attorney Duchemin have been acquainted for approximately 11 years. Sometime before August 7, 2000, Johnson told her daughter, Jennifer Mayer, who was then experiencing marital difficulties, that she should retain Attorney Duchemin to represent her; Johnson recommended Attorney Duchemin to Jennifer as a "good lawyer" for her to hire.

¶ 6.    On August 7, 2000, Attorney Duchemin encountered Jill Johnson at the restaurant. Ms. Johnson asked Duchemin if he would mind speaking to her daughter, Jennifer, whom he did not know, about rep-

resenting Jennifer in a possible divorce action. Attorney Duchemin told Ms. Johnson that he would "be happy to talk to her."

¶ 7. When Attorney Duchemin returned to his office he received a message asking him to call Jennifer Mayer who had just called seeking an appointment. Attorney Duchemin returned Ms. Mayer's call and in their subsequent telephone conversation, Duchemin obtained certain preliminary information, including the fact that that morning Ms. Mayer's husband had an appointment with his lawyer to discuss the couple's marital difficulties. Attorney Duchemin informed Ms. Mayer what his fees would be if she retained him and told her that he would send her a packet of information concerning his representation. At the conclusion of that telephone conversation, Attorney Duchemin understood that Jennifer Mayer had not retained him, nor had she instructed him to start a divorce action on her behalf. As he told her he would, Attorney Duchemin mailed Jennifer Mayer the packet of information and forms to complete, anticipating that she would schedule an appointment when she was ready to proceed and retain him to represent her in a divorce action.

¶ 8. During their five- to ten-minute telephone conversation, Jennifer Mayer told Attorney Duchemin that before and during the marriage, Jill Johnson had provided both Jennifer and her husband, Randy, with money to support the family's trucking business. However, it was unclear to Attorney Duchemin from Ms. Mayer's report whether that money had been advanced by Jill Johnson as loans or as gifts. Jennifer Mayer later testified that she asked Attorney Duchemin "if I brought it [the agreement the Mayers had with Ms. Johnson] in if he could look at it, because my mother had wanted me to ask him about it." Mayer also

acknowledged in her testimony that both she and her mother were concerned about the money Ms. Johnson had provided and Jennifer Mayer agreed that she wanted her mother to be protected. Jennifer Mayer later claimed, however, that she never told Attorney Duchemin that she wanted him to represent her in a divorce action, nor had she authorized him to file a divorce action for her. She also asserted that she never told Attorney Duchemin that he should talk to her mother about the loans or gifts of money or anything else relating to a possible divorce between Ms. Mayer and her husband.

¶ 9.    After his telephone conversation with Jennifer Mayer Attorney Duchemin later that day returned to the restaurant where he again spoke with Jill Johnson. Attorney Duchemin told Ms. Johnson that her daughter had called him that morning. Attorney Duchemin then asked Ms. Johnson about the financial agreements she had with her daughter and son-in-law. He asked Ms. Johnson if she had loaned or given the money to the couple; he also asked Ms. Johnson if she had any documentation concerning these transactions. Attorney Duchemin told Ms. Johnson that she should, if she could, provide all the details and documentation about the money advances because it would be important if a divorce action were to be commenced.

¶ 10.    Attorney Duchemin acknowledged that he had not told Jennifer Mayer that he was going to talk to her mother about these money transactions and he also acknowledged that he had not been formally retained by Jennifer Mayer at that point. Attorney Duchemin asserted, however, that he believed he was authorized to discuss the issue of representation and the issue of finances with Jill Johnson because he needed to find out " . . . whether or not there were loans or gifts to this

young lady if I was going to competently be able to assist her in her case and to do so in a timely manner."

¶ 11. Jennifer Mayer never returned the forms to Attorney Duchemin retaining him as her attorney. Attorney Duchemin subsequently sent her a $90 bill for his services.

¶ 12. Jennifer Mayer thereafter filed a grievance with the Office of Lawyer Regulation against Attorney Duchemin complaining that she had neither expressly nor impliedly authorized him to discuss any part of her telephone conversation with Duchemin with her mother. Ms. Mayer admitted, however, that she knew that Attorney Duchemin and her mother were friends, and also that she knew her mother understood that Ms. Mayer was going to call Attorney Duchemin about representing her in a possible divorce action. Furthermore, Ms. Mayer acknowledged that she had told Attorney Duchemin that she was concerned that her mother be "protected" and that she did not want her husband to avoid repayment of the money to her mother. Jennifer Mayer also conceded that she had never told Attorney Duchemin *not* to tell her mother about the telephone conversation, nor had she instructed Attorney Duchemin not to talk to or ask her mother about the money transactions.

¶ 13. The LRS complaint against Attorney Duchemin subsequently asserted that his conversation with Jill Johnson after his telephone conversation with Jennifer Mayer violated SCR 20:1.6 because Jennifer Mayer had not expressly authorized Attorney Duchemin to disclose to Ms. Johnson information related to Ms. Mayer's "possible retention of [Duchemin] relative to a divorce action . . . ." The LRS complaint also alleged that the disclosure made by Duchemin to Ms. Johnson was not " . . . impliedly authorized as necessary to carry

out the possible representation" nor was it made under circumstances permitted by SCR 20:1.6.

¶ 14.  As noted, after a public hearing, the referee issued his report detailing the facts as presented at the hearing and making specific findings of fact which, in pertinent part, state:

. . . .

3.     On August 7, 2000, Jill Johnson asked the Respondent [Attorney Duchemin] if he would represent her daughter and if he would talk to her concerning a divorce matter.

4.     That on August 7, 2000, Jennifer Mayer contacted the Respondent and left a message for him to call her back.

5.     That on August 7, 2000, the Respondent returned Mrs. Mayer's call and there was a discussion concerning a potential divorce case.

6.     That on August 7, 2000, the Respondent and Jennifer Mayer had a telephone conversation concerning the potential divorce case.

7.     That on August 7, 2000, Jill Johnson and the Respondent had a conversation at the restaurant at approximately 1:30 p.m.

8.     That the only other person in the restaurant at the time of the conversation between Jill Johnson and the Respondent was Larry Bryn.

9.     That Mr. Bryn did not hear any part of the conversation between Jill Johnson and the Respondent.

10.    That the Respondent asked Jill Johnson a ques-

tion about the loans during that conversation.

11. That the Respondent did not disclose any infor- mation which he obtained from Mrs. Mayer during their phone conversation.

12. That during the conversation of August 7, 2000 with Mrs. Johnson, the Respondent did not make any derogatory references to Randy Mayer.

¶ 15. Based on these findings, the referee concluded that Attorney Duchemin did not violate SCR 20:1.6. And as noted, the referee recommended that the complaint be dismissed and that no costs be assessed against Attorney Duchemin.

¶ 16. The LRS's primary argument on its appeal is that Finding of Fact #11 to the effect that Attorney Duchemin had not disclosed any information he had *obtained* from Ms. Mayer during the phone conversation, is actually a conclusion of law; according to the LRS, that conclusion is erroneous as a matter of law because SCR 20:1.6 broadly proscribes disclosure of information "relating to representation." The LRS maintains the rule does not proscribe disclosure of information "obtained from a client." *But see In Re Disciplinary Proceedings Against Harman,* 2001 WI 71, 244 Wis. 2d 438, 628 N.W.2d 351, where the Office of Lawyer Regulation had alleged, the referee so found, and this court agreed that a lawyer had violated SCR 20.1.6(a) by disclosing information the lawyer had "obtained" while representing a client. *Id.* at ¶¶ 2, 30, 33. The LRS insists that because there was no express or implied authorization for any disclosure, Attorney Duchemin's admitted conversation with Jill Johnson after his telephone conversation with his potential

20

client, Jennifer Mayer, constituted a violation of SCR 20:1.6(a) as a matter of law.

¶ 17. Moreover, according to the LRS, common sense suggests that until Jennifer Mayer decided to proceed with a divorce action with Attorney Duchemin representing her, Duchemin should not have disclosed any details of Ms. Mayer's contact with him to Jill Johnson even though Johnson had recommended Attorney Duchemin to her daughter as a good lawyer to represent her in a divorce action. The LRS also maintains that by initiating a discussion with Jill Johnson about her financial agreements with her daughter and son-in-law, Attorney Duchemin revealed information to Jill Johnson about representation of a client. Therefore, the LRS insists that the referee erred as a matter of law in concluding that Attorney Duchemin's discussion with Johnson did not involve a disclosure within the meaning of SCR 20:1.6(a). Furthermore, the LRS asserts that based on the undisputed facts, there is no reasonable scenario under which it could be concluded that Jennifer Mayer had impliedly authorized the disclosure.

¶ 18. We disagree. We assume, for purposes of this opinion, that the conversation between Attorney Duchemin and Jennifer Mayer created a lawyer-prospective client relationship sufficient to subject Attorney Duchemin to the duties regarding client confidentiality set out in SCR 20:1.6. See RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 15 (2000) at page 140, which notes that a lawyer must treat information disclosed by a prospective client as confidential even if the client or lawyer decides not to proceed with the representation. We believe, however, that under the particular facts and circumstances of this case, Attorney Duchemin was impliedly authorized to discuss with Jill Johnson not

21

only the fact that her daughter, as Johnson suggested, had contacted him about possible representation, but also to ask Johnson about documentation she may have regarding the money transactions she had with her daughter and son-in-law. These facts, none challenged by the LRS on this review and none clearly erroneous include: (1) Jill Johnson recommended Duchemin as a good lawyer for her daughter to hire to represent her in a possible divorce; (2) Jill Johnson asked Duchemin, whom she had known for 11 years, if he would talk to her daughter about possible representation; (3) Jennifer Mayer in fact, as her mother urged, telephoned Duchemin about possibly representing her in the divorce action; (4) during that conversation Ms. Mayer told Duchemin that she wanted her mother "protected" with respect to the money her mother had advanced both before and during the marriage; (5) complying with her mother's request, Jennifer Mayer asked Duchemin if he would look at the agreement; and (6) Jennifer Mayer had not instructed Duchemin not to talk to her mother nor mention to her mother that Ms. Mayer had called him as her mother had suggested.

¶ 19.    We conclude under these circumstances that even though Attorney Duchemin had not been formally retained by Jennifer Mayer to represent her, any disclosures he may have made to Jill Johnson after his telephone conversation with her daughter, were at the very least, impliedly authorized so that he could carry out his then pending representation of Ms. Mayer. We conclude under these particular facts and circumstances that Attorney Duchemin was impliedly authorized to discuss the matter with Jill Johnson. Accordingly, we adopt the referee's findings of fact and

conclusions of law and we accept the referee's recommendation that this proceeding be dismissed without costs.

¶ 20.   IT IS ORDERED that this disciplinary proceeding is dismissed without costs.

¶ 21.   JON P. WILCOX, J., did not participate.