# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1263-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Donald J. Harman, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, v. Donald J. Harman, Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST HARMAN

| | |
|---|---|
| OPINION FILED: | December 18, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there was a brief filed by *Donald J. Harman*, La Crosse, WI.

For the complainant-respondent, there was a brief filed by *Matthew F. Anich* and *Dallenbach Anich & Wickman SC*, Ashland.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2018AP1263-D

STATE OF WISCONSIN            :      IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Donald J. Harman, Attorney at Law:

Office of Lawyer Regulation,

      Complainant-Respondent,

  v.

Donald J. Harman,

      Respondent-Appellant.

**FILED**

**DEC 18, 2019**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   Attorney Donald J. Harman has appealed a report and recommendation filed by Referee Allan E. Beatty, concluding that Attorney Harman committed three counts of professional misconduct and recommending that his license to practice law in Wisconsin be suspended for six months.   Rather than challenging the referee's findings of fact or conclusions of law, Attorney Harman argues on appeal that the referee should have recused himself.   Attorney Harman did not request a substitution of the referee pursuant to SCR 22.13(4).   When he subsequently

raised the issue of the referee's participation, he refused to participate in a scheduled telephone conference at which the recusal issue would have been addressed. Based on these facts, we find that Attorney Harman waived his objection to the referee's participation in this matter.

¶2 Upon careful review of this matter, we uphold the referee's findings of fact and conclusions of law, and we agree that a six-month suspension of Attorney Harman's Wisconsin law license is an appropriate sanction for the misconduct at issue. We further agree with the referee that, as a condition of the reinstatement of his license, Attorney Harmon should be required to satisfy a judgment entered against him. We also find it appropriate to follow our usual custom of imposing the full costs of this proceeding, which are $7,662.28 as of May 13, 2019, on Attorney Harman.

¶3 Attorney Harman was admitted to practice law in Wisconsin in 1960. He has been disciplined on four prior occasions. In 1987 he was publicly reprimanded for having charged one client an excessive fee and for failing to turn over another client's files upon termination of representation, notwithstanding a court order to do so. In re Disciplinary Proceedings Against Harman, 137 Wis. 2d 148, 403 N.W.2d 459 (1987). In 1989 he received a consensual public reprimand for having acted in the presence of a conflict of interest, failing to maintain complete trust account records and render proper accounting of funds held in trust, and failing to cooperate. Public Reprimand of Donald J. Harman, April 26, 1989. In 1998 he received another public

2

reprimand for failing to act promptly in his client's matter and failing to notify the client of a significant procedural development.  In re Disciplinary Proceedings Against Harman, 221 Wis. 2d 238, 584 N.W.2d 537 (1998).  In 2001, Attorney Harman's license was suspended for six months for eight counts of misconduct that included trust account violations, dishonesty, presence of a conflict of interest without obtaining written consent, failing to keep client confidences, knowingly disobeying the rules of a tribunal, and on two separate occasions using information obtained during the representation of a former client to that former client's disadvantage.  In re Disciplinary Proceedings Against Harman, 2001 WI 71, 244 Wis. 2d 438, 628 N.W.2d 351 (2001).

¶4  On July 6, 2018, the Office of Lawyer Regulation (OLR) filed a complaint alleging three counts of misconduct with respect to Attorney Harman's representation of W.Z. in a divorce proceeding in LaCrosse County.  Attorney Harman represented W.Z. from February 11, 2016 until April 3, 2017.  He did not charge W.Z. for his representation.  The petitioner in the divorce action, R.Z., was represented by Attorney Rochelle Jones of Legal Action of Wisconsin, Inc.

¶5  On September 11, 2015, a domestic abuse injunction was entered against W.Z.  On February 11, 2016, LaCrosse County Family Court Commissioner (FCC) Elizabeth A. Wright issued a temporary order in the divorce requiring the parties to file joint federal and state income tax returns with the tax refunds to be equally divided after being processed through Attorney Jones' trust account.

3

¶6   On April 20, 2016, with no motion or order to show cause pending, Attorney Harman sent an unsolicited letter to FCC Wright asking her to "dismiss the injunction sua sponte and vacate the order awarding custody of the two children to [R.Z.]."  The letter informed the family court commissioner that Attorney Harman and his client "are also asking that the police investigate [R.Z.'s] lies" and said if police were satisfied that R.Z. did lie, she should be charged with obstruction.

¶7   Attorney Harman's April 20, 2016 letter to FCC Wright enclosed a "claim of [W.Z.'s]," apparently provided in an attempt to satisfy the requirements of Wis. Stat. § 893.80.  The "claim" alleged that W.Z. had been damaged through the negligence of an officer of the LaCrosse Police Department, the office of the LaCrosse County District Attorney, the office of the Wisconsin State Public Defender, and Legal Action of Wisconsin, Inc., acting through Attorney Jones.  The claim sought damages of $550,000.

¶8   On April 25, 2016, Attorney Harman sent an additional unsolicited letter to FCC Wright, with various enclosures, including medical records of W.Z. and purported "transcripts" of conversations between W.Z. and his wife.  Attorney Harman's letter stated:

> I challenge [R.Z.] or [the assistant district attorney] or [an attorney with the Office of the State Public Defender] to show me where in the medical records of [W.Z.] any opinion of any doctor that [W.Z.] has a mental illness and/or that a doctor prescribed medication for his mental illness.

¶9   On April 25, 2016, Attorney Jones sent Attorney Harman a letter enclosing the Z.'s state income tax refund check in the

4

amount of $871, as well as the Z.'s federal income tax refund check in the amount of $8,803, with a request that Attorney Harman have his client endorse both checks and return them to Attorney Jones' office so she could deposit them in her client trust account and distribute the funds, pursuant to the February 11, 2016 temporary order in the divorce.

¶10 On May 2, 2016, Attorney Harman sent another unsolicited letter to FCC Wright to "present information to you about [R.Z.'s] untruthfulness." Among other things, the letter said, "[R.Z.] should have her child visits supervised so as to try and insulate her children from a mother who has no moral compass and whose life is driven by sex, greed and a desire to dominate others." None of Attorney Harman's letters to FCC Wright constituted motions for relief and the letters failed to conform to basic requirements of Wisconsin civil procedure rules.

¶11 On May 16, 2016, Attorney Harman filed a motion on W.Z.'s behalf in the divorce action seeking dismissal of the domestic abuse injunction which had been entered in a separate case. On June 17, 2016, Attorney Harman sent yet another letter to FCC Wright along with a purported "transcript" of a conversation between W.Z. and his daughter with an employee of "The Parenting Place." The June 17, 2016 letter concluded, "I have reported three instances of [R.Z.'s] inappropriate behavior. As a result I am asking the Family Court Commissioner what corrective action she would recommend be taken with respect to [R.Z.]."

¶12 On June 27, 2016, Attorney Jones filed a notice of motion and motion for remedial contempt and a supporting affidavit in the

5

divorce action relating to W.Z.'s failure to endorse and return the tax refund checks as required under the terms of the February 11, 2016 temporary order. At the same time, Attorney Jones filed a response opposing Attorney Harman's motion, request for dismissal of motion and request for costs. Attorney Jones requested sanctions against Attorney Harman as well as costs associated with defending the action.

¶13 On July 6, 2016, Attorney Harman filed a counterclaim for annulment on W.Z.'s behalf in the Z. divorce. The grounds asserted for an annulment in the counterclaim were frivolous.

¶14 On August 9, 2016, Attorney Harman sent another letter to FCC Wright, this time including letters to a clinical therapist, a nurse practitioner, a generalized response from the therapist, and a printout defining mental illness.

¶15 On August 18, 2016, FCC Wright issued an order denying W.Z.'s motion seeking relief from the domestic abuse injunction, finding the motion unwarranted under the law and frivolous. The order also denied W.Z.'s motion to dismiss the temporary order that had been entered on February 11, 2016. The order stated the family court commissioner did not have authority to enter a judgment of annulment, and the FCC declined to enter a ruling regarding W.Z.'s counterclaim for an annulment that had been filed on July 6, 2016. The order denied W.Z.'s motion requesting the imposition of sanctions against Attorney Jones, finding the motion not in accordance with the law and frivolous. The order also found W.Z. and Attorney Harman in contempt of the February 11, 2016 temporary order relating to the parties' income tax refunds and

found that W.Z. had willfully withheld the refund checks. The FCC deferred a ruling as to the amount of R.Z.'s award of fees, costs, and sanctions pending her attorney filing a petition for fees with a supporting affidavit.

¶16 Attorney Harman sent a letter dated August 9, 2016 to FCC Wright saying, "please consider the following factual material in making your decision about dismissing the Domestic Abuse Injunction now in force against [W.Z.] that allows one half hour of visitation with his children one week, and two visits every other week."

¶17 On August 10, 2016, W.Z. purged the contempt by endorsing the federal and state income tax refund checks and providing them to Attorney Jones.

¶18 On August 19, 2016, Attorney Harman filed requests for de novo hearings in the Z. divorce along with a request for substitution of LaCrosse County Circuit Court Judge Levine. The substitution request was untimely and was denied.

¶19 On August 24, 2016, Judge Levine issued an order dismissing W.Z.'s motions for de novo hearings due to his failure to appear. The order noted that W.Z.'s de novo motion regarding the domestic abuse injunction case was untimely. The order also stated that upon receipt of affidavits in support of an award for fees, costs, and sanctions, W.Z. would have 10 days to object to the amount of fees requested by R.Z.'s attorney. Attorney Jones and her supervisor from Legal Action of Wisconsin filed affidavits that same day.

7

¶20 After sending FCC Wright the April 20, 2016, April 25, 2016, May 2, 2016, June 17, 2016, and August 9, 2016 letters with voluminous enclosures, Attorney Harman sent Judge Levine a September 2, 2016 letter alleging that FCC Wright was "precluded from hearing the Motion to Rescind the Domestic Abuse Injunction because she was to avoid an impropriety as per SCR 60.3 [sic] when she knew that respondent had filed a claim against her prior to the motion hearing."

¶21 In the September 2, 2016 letter, Attorney Harman also responded to the court's order finding W.Z. and himself in contempt. The letter stated that Attorney Harman had held the tax refund checks until FCC Wright denied his motion and that his client had not participated in making the decision to hold the tax refund check. Attorney Harman further stated he was never given written notice of the change of hearing date for the de novo hearing before Judge Levine.

¶22 After alleging in the September 2, 2016 letter to Judge Levine that FCC Wright was precluded from acting in the Z. divorce, on September 7, 2016, Attorney Harman sent FCC Wright a letter suggesting that W.Z. meet with the child support agency without R.Z. being present, saying "what can we do to facilitate such a meeting?"

¶23 On September 6, 2016, Attorney Harman sent a letter with enclosures, including various pictures and text messages, to Attorney Jones and FCC Wright claiming that R.Z. was falsely advertising herself as divorced.

8

¶24 A hearing was held before FCC Wright on September 12, 2016 with respect to W.Z.'s request for dismissal of the domestic abuse injunction; his request to dismiss the temporary order; his request for a judgment of annulment; and R.Z.'s request for attorney's fees for having to respond to Attorney Harman's submissions.

¶25 On September 13, 2016, Judge Levine entered a $4,400 judgment in favor of Legal Action of Wisconsin for having to respond to Attorney Harman's various motions in the Z. divorce.

¶26 Attorney Harman sent a letter dated September 14, 2016 to FCC Wright commenting on the award of attorney's fees to Attorney Jones and noting his continued objection to FCC Wright participating in the proceedings.

¶27 On October 12, 2016, Nunc Pro Tunc September 12, 2016, FCC Wright issued an order stemming from the September 12, 2016 hearing. The order stated:

> The respondent's request for dismissal of the domestic abuse injunction is frivolous, on grounds that the court has no authority in the divorce action to dismiss an injunction issued in a separate matter; the respondent's request to dismiss the temporary order is frivolous, because the available remedies were to either file a request for a *de novo* hearing or a motion to amend the temporary order; the respondent's request to the family court for a judgment of annulment is frivolous because the family court commissioner has no authority to enter such a judgment; the respondent's request for sanctions against the petitioner's attorney is frivolous because petitioner's pleadings complied with statutory requirements and the respondent failed to state with any specificity any impropriety with those pleadings; the petitioner's attorney had to respond to a 618-page submission of the respondent containing duplicative documents, Chinese text, improper transcripts, and

personal information about the parties irrelevant to the matter; Attorney Jones correctly filed a motion for contempt for respondent's failure, until the September 12, 2016 hearing, to comply with the 2015 tax refund provisions of the February 11, 2016 temporary order (attributing this to Harman having failed to obtain his client's endorsement on the refund checks and then return them to Attorney Jones); [W.Z.] is not personally responsible for any of the aforesaid actions; and the petitioner's request for attorneys fees in the amount of $4,400 is reasonable.

¶28 Attorney Harman was ordered to pay the $4,400 within 60 days. To date, the judgment remains unpaid.

¶29 In May 2017, Attorney Harman sent a letter to Attorney Jones and included two satisfactions of judgments relating to the obligations owed by Attorney Harman and W.Z. Attorney Jones responded that since Attorney Harman was no longer the attorney of record for W.Z., she could not discuss any issues that pertained to him. Attorney Jones also informed Attorney Harman that a satisfaction of judgment as to Attorney Harman's obligation was not possible since he had not paid anything on the judgment, nor had he made any arrangements to do so.

¶30 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Harman's representation of W.Z.:

> **Count One:** By seeking relief from and providing evidence to the family court commissioner in a manner inconsistent with proper civil procedures and deemed frivolous by the family court commissioner, Attorney Harman violated SCR 20:1.1.[1]

---

[1] SCR 20:1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

10

**Count Two:** By failing until at least the August 10, 2016 hearing[2] to comply with the tax refund provisions of the February 11, 2016 temporary order, Attorney Harman violated SCR 20:3.4(c).[3]

**Count Three:** By failing to comply with the court's order that he personally pay the $4,400 judgment to Legal Action of Wisconsin for attorney fees in LaCrosse County Case 2016FA22, Attorney Harman violated SCR 20:3.4(c).

¶31 The referee was appointed on July 24, 2018. On August 27, 2018, Attorney Harman filed a motion to dismiss the OLR's complaint along with a supporting affidavit. He filed an answer and an affirmative defense on August 31, 2018. The answer denied the three paragraphs of the OLR's complaint stating the counts of misconduct. The answer did not deny, or even mention, any of the paragraphs in the complaint setting forth the facts of Attorney Harman's representation of W.Z. The answer accused FCC Wright of "impropriety" and alleged that she ignored the civil rights claim filed against her by W.Z. Attached to the answer was a copy of a June 5, 2018 letter from the Executive Director of the State of Wisconsin Judicial Commission to Attorney Harman acknowledging receipt of Attorney Harman's correspondence to the Judicial Commission accusing FCC Wright and Judge Levine of misconduct.

---

[2] There is an October 12, 2016 order (Nunc Pro Tunc September 12, 2016) that refers to finding Attorney Harman in contempt until a September 12, 2016 hearing. However, there is also an August 18, 2016 order indicating that W.Z. purged the contempt by endorsing and giving the checks to Attorney Jones during an August 10, 2016 hearing.

[3] SCR 20:3.4(c) provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

¶32 Since Attorney Harman's answer did not deny any of the factual allegations contained in the complaint, the OLR filed a motion for summary judgment on September 21, 2018. The referee sent an email to the OLR's counsel and Attorney Harman on September 26, 2018 to set a date for a telephonic scheduling conference.

¶33 On September 26, 2018, although he had not requested a substitution of the referee within ten days of the referee's appointment, as required by SCR 22.13(4), Attorney Harman sent the referee and the OLR's counsel an email saying,

> I will ask that you recuse yor self [sic] on the grounds that OLR primary witness the FCC Wright was a former co-employee, or a relationship where you were in charge of the office and the FCC was working for you. The Judicial Code requires that you abstain from further proceedings.

¶34 The referee sent an email to Attorney Harman and the OLR's counsel on September 26, 2018, stating that a telephone scheduling conference would be held at 9:00 a.m. on October 3, 2018. The email stated that the recusal issue would be addressed during the scheduling conference.

¶35 On October 2, 2018, Attorney Harman sent an email to the referee and the OLR's counsel saying he would not participate in the telephone scheduling conference and that, "I think that Ref Beatty wants to get me to a phine [sic] call sohe [sic] can say I waived my right to object to his effort to act as Referee."

¶36 The referee responded by sending an October 2, 2018 email to Attorney Harman and the OLR's counsel saying:

> You are required to participate in phone conferences relating to your disciplinary matter. If you choose not to participate, then decisions may be made with you in

12

default. As I have indicated in previous emails, we will discuss in tomorrow's phone conference how to address the issues you have raised. If you do not participate, those issues may be considered waived. Further, email is not the proper forum for addressing the merits of issues in this case. I urge you to participate in tomorrow's phone conference.

¶37 On October 3, 2018, at 9:00 a.m., as instructed by the referee, the OLR's counsel initiated a telephone conference call by first calling Attorney Harman's office. There was no answer at Attorney Harman's office, so the OLR's counsel left a telephone message for Attorney Harman. The OLR's counsel then called the referee to complete the scheduled telephone conference and reported that he had called Attorney Harman's office but no one had answered the phone.

¶38 Following Attorney Harman's refusal to participate in the October 3, 2018 telephone scheduling conference, the referee signed an order finding that Attorney Harman's choice not to participate in the telephone scheduling conference represented egregious conduct on Attorney Harman's part. The referee denied Attorney Harman's motion to dismiss and granted the OLR's motion for summary judgment. The referee stated that he would decide the appropriate sanction based on written submissions from the parties, to be simultaneously filed by November 1, 2018. The referee stated if Attorney Harman filed a written request for a hearing on the issue of sanction within 15 days of the date of the order, the referee would schedule such a hearing. The referee stated he did not want to schedule a hearing if Attorney Harman was not going to show up.

13

¶39 On October 4, 2018, Attorney Harman sent an email to the referee and the OLR's counsel. The subject of the email was "Void order." The email stated, "a provision of the Judicial Code prohibits Judges from appearing in cases involving former employees' naughty naughty Al baby [sic]."

¶40 Attorney Harman did not request a hearing on the issue of sanction, so no hearing was scheduled. Both sides submitted written briefs regarding the sanction recommendation.

¶41 The referee issued his report and recommendation on November 28, 2018. The referee found that the OLR had proved by clear, satisfactory, and convincing evidence that Attorney Harman committed each of the violations alleged in the OLR's complaint. The referee found that a six-month suspension of Attorney Harman's Wisconsin law license was an appropriate sanction for his misconduct.

¶42 The referee noted there were multiple aggravating factors in this case, including the fact that Attorney Harman has four prior disciplinary proceedings, the most recent one resulting in a six-month license suspension. The referee noted that some of the same problems evident in the previous disciplinary proceedings were also present in this one. For example, the referee noted that in its 2001 decision this court agreed with the referee's observation that Attorney Harman's pattern of misconduct demonstrated a disregard of the legal system and showed his willingness to ignore established procedures for dispute resolution in favor of his perceived personal expediency.

14

¶43 The referee said Attorney Harman has continued to demonstrate a disregard for and a lack of understanding of the rules of civil procedure and the rules of disciplinary proceedings. The referee said Attorney Harman persists in engaging in "litigation by correspondence" and rather than filing motions and briefs and making arguments, he instead sends letters. The referee noted that in the Z. divorce, Attorney Harman sent FCC Wright eight letters between April 20, 2016 and September 14, 2016. The referee said the correspondence demonstrates Attorney Harman's inability to accept the finality of judicial officers' decisions as he kept trying to reargue what had previously been decided. The referee noted that Attorney Harman's one motion seeking to obtain a de novo review was dismissed due to his non-appearance, and the referee also noted the judge further found that the motion was untimely.

¶44 The referee said despite the filings in the Z. case being in the form of correspondence rather than motions, FCC Wright addressed them as motions and found four of them to be frivolous. The referee said the one motion Attorney Harman did file, to dismiss the domestic abuse injunction, was incorrectly filed in the divorce action rather than in the separate injunction case.

¶45 The referee said Attorney Harman showed the same pattern of litigation by correspondence in this disciplinary proceeding, litigating by email rather than by motion. The referee commented that having been the respondent in four prior disciplinary proceedings, Attorney Harman should be especially knowledgeable about the rules.

¶46 The referee found another aggravating factor in the case to be the potential harm to W.Z. when Attorney Harman withheld the income tax refund checks from W.Z., exposing his client to the possibility of a finding of contempt. Further, the referee found it particularly troubling that when Attorney Harman does not like a judicial officer's decisions, or fears what the decisions could be, he attacks the judicial officer. The referee noted that in the 2001 disciplinary proceeding Attorney Harman alleged that the referee had a conflict of interest and asked her to recuse herself. The referee said in the Z. case, Attorney Harman tried to get the family court commissioner removed, and in this disciplinary proceeding, Attorney Harman asked the referee to recuse himself and then refused to participate in a scheduling conference when the recusal did not automatically occur.

¶47 The referee said Attorney Harman has not demonstrated acceptance of responsibility, nor has he demonstrated an understanding of the issues. The referee said Attorney Harman's responses in the disciplinary proceeding have primarily been attempts to re-litigate the issues in the Z. divorce. The referee said it does not appear that Attorney Harman is able to move on from court decisions with which he disagrees. The referee also said it is clear that Attorney Harman failed to provide W.Z. with competent representation. The referee said Attorney Harman failed to demonstrate the legal knowledge, skill, thoroughness, and preparation reasonably necessary for that representation, and he also demonstrated an inability or unwillingness, or both, to follow required procedures and to focus on the relevant issues.

16

¶48 The referee concluded that a six-month suspension of Attorney Harman's license to practice law in Wisconsin was an appropriate sanction. The referee also recommended that, as a condition to the reinstatement of Attorney Harman's law license, that he be ordered to satisfy the $4,400 judgment entered against him in the divorce case, and he be ordered to obtain a neuro-psychological examination addressing his ability to understand and conform his conduct to the Rules of Professional Conduct for Attorneys.

¶49 In his appeal, Attorney Harman argues that the OLR falsely claimed, in its summary judgment motion, that Attorney Harman did not deny facts in his answer and affirmative defense, which then allowed the OLR to take a default judgment against him. Attorney Harman devotes the bulk of his argument to reiterating his claim that the referee should have recused himself due to the fact that for five years both the referee and FCC Wright were employed at the state public defender's LaCrosse office. Attorney Harman also continues to argue that FCC Wright should have recused herself from the Z. divorce proceeding, because he and his client had accused her of violating W.Z.'s civil rights. He says, "it appears that FCC Wright has imposed her revenge against both Harman's client and Harman by not recusing herself and not setting aside the domestic abuse injunction against Harman's client and at the same time imposing a judgment of $4,400 for attorney's fees upon Harman." Attorney Harman accuses the OLR of failing to disclose exculpatory facts, in violation of Brady v. Maryland, 373 U.S. 83 (1963), which requires a prosecutor to disclose any

17

evidence favorable to the accused that goes toward the creditability of a witness.

¶50 Attorney Harman concludes his brief by saying that, "OLR's participation in this disciplinary proceeding is oderiferous [sic]." He says, "if disciplined . . . because of the antics of the OLR prosecution team, Respondent shall imagine himself to be like a member of a den of thieves whose members ousted a fallen member for being honest."

¶51 The OLR responds that Attorney Harman's brief should be stricken because it fails to comply with the requirements of Wis. Stat. § 809.19(1). The OLR goes on to argue that Attorney Harman never moved the referee to recuse himself, nor did he ever move to disqualify the referee. In addition, the OLR points out that Attorney Harman refused to participate in the October 3, 2018 telephone scheduling conference at which the referee indicated he would address the recusal issue. For these reasons, the OLR asserts that Attorney Harman either waived or forfeited his right to appeal the recusal issue since this court has held that failure to preserve issues means they are waived. See, e.g., In re Ambac Assurance Corp., 2012 WI 22, ¶36, 339 Wis. 2d 48, 810 N.W.2d 450.

¶52 Turning to the merits of Attorney Harman's claim that the referee should have recused himself, the OLR notes that the referee disclosed on the record the information he believed the parties might consider relevant to the question of his recusal, and the referee noted that he and FCC Wright were both attorneys in the LaCrosse Office of the State Public Defender before Attorney Wright became the LaCrosse County Family Court Commissioner and

18

before the referee retired from the state public defender's office in 2015. The OLR notes the referee stated he never held a supervisory position in the public defender's office and was never FCC Wright's supervisor.

¶53 The OLR says even if Attorney Harman had participated in the October 3, 2018 telephone scheduling conference and had filed or made a motion asking the referee to recuse himself, the referee was not required to do so since the fact that the referee once worked in the same office with FCC Wright, who was apparently the person who filed the grievance against Attorney Harman with the OLR, is not a fact or circumstance where the referee's own interest may be perceived to impair his impartiality. In addition, the OLR says a basic premise of Attorney Harman's contention is apparently that FCC Wright was the OLR's primary witness. The OLR says in fact it had no need to call FCC Wright, or anyone else, as a witness given that Attorney Harman had already admitted all of the factual allegations in the complaint.

¶54 The OLR says while Attorney Harman argues that he was denied a due process hearing, the only reason no hearing was held in this case was that Attorney Harman unilaterally and voluntarily decided to refuse to participate. The OLR argues there is no denial of due process when someone who has had timely notice of a proceeding fails to appear and present evidence. The OLR says even after Attorney Harman refused to participate in the telephone scheduling conference, the referee still gave him an opportunity to request a hearing on the issue of appropriate sanction, but Attorney Harman declined that opportunity.

19

¶55 Turning to the question of the appropriate level of discipline, the OLR reiterates that this is Attorney Harman's fifth disciplinary proceeding, and it notes that the referee identified a pattern of misconduct which would warrant a six-month suspension.

¶56 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶57 We conclude there has been no showing that any of the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We further agree with the referee's conclusions of law that Attorney Harman violated the supreme court rules set forth above.

¶58 Attorney Harman does not challenge the referee's findings of fact or his conclusions of law. Instead, he argues that the proceeding was unfair, and even violative of due process, because the referee refused to recuse himself. As the OLR points out, SCR 22.13(4) provides that within ten days after notice of appointment of the referee, either the OLR or the respondent may file a motion for substitution of the referee, which shall be granted as a matter of right. Additional motions shall be granted for good cause. Attorney Harman never invoked his right for substitution of the referee under SCR 22.13. Instead, he raised the issue in an email. When the referee informed the parties that

20

the recusal issue would be addressed in the course of a telephone scheduling conference, Attorney Harman announced he would not participate in the conference. Under the circumstances, we find, as we did in Attorney Harman's 2001 disciplinary proceeding, that Attorney Harman waived any objection to the referee's participation in this matter.

¶59 In addition, we reject Attorney Harman's claim that he was denied due process in the course of this proceeding. He was given notice of the telephone scheduling conference and refused to participate in it. The consequences of his refusal are his alone.

¶60 As to the appropriate level of discipline, we agree with the referee that a six-month suspension of Attorney Harman's law license is appropriate. This is Attorney Harman's fifth disciplinary proceeding. In the 2001 proceeding, which also resulted in a six-month license suspension, we noted that Attorney Harman's pattern of conduct demonstrated a disregard of the legal system. The same holds true here. Attorney Harman's course of conduct in his representation of W.Z. resulted in Legal Action of Wisconsin having to incur the time and expense of responding to a series of frivolous filings. Although Attorney Harman was ordered to pay $4,400 to Legal Action of Wisconsin within 60 days of September 12, 2016, that amount remains unpaid. Attorney Harman's conduct in representing W.Z. was unprofessional, and his continued attacks on the family court commissioner, the judge, and the referee in this disciplinary proceeding are also troubling and demonstrate a lack of respect for the legal system and the judicial process.

¶61 Although no two disciplinary proceedings are identical, we find that In re Disciplinary Proceedings Against Mauch, 2010 WI 2, 322 Wis. 2d 79, 777 N.W.2d 637 is somewhat analogous. In Mauch, as here, the attorney had been disciplined on four separate occasions. In imposing a six-month suspension, this court agreed with the referee that in light of Attorney Mauch's apparent indifference to the seriousness of the proceedings, a suspension that would require the attorney to petition for reinstatement will provide assurance that he can be safely recommended to the profession, the courts, and the public as a person who is fit and capable to practice law in this state. Mauch, 322 Wis. 2d at 90. The same rationale applies here, and we agree with the referee that a six-month license suspension is appropriate. As is our usual custom, we find it appropriate to assess the full costs of this proceeding against Attorney Harman.

¶62 Finally, we agree with the referee's recommendation that, as a condition to the reinstatement of his license to practice law in Wisconsin, Attorney Harman should be ordered to satisfy the $4,400 judgment entered against him in the Z. divorce case. We do not agree with the referee that the reinstatement of Attorney Harman's license to practice law should be conditioned upon his obtaining a neuro-psychological examination.

¶63 IT IS ORDERED that the license of Donald J. Harman to practice law in Wisconsin is suspended for a period of six months, effective January 29, 2020.

¶64 IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin, Donald

22

J. Harman shall satisfy the $4,400 judgment entered against him in the Z. divorce case in LaCrosse County.

¶65 IT IS FURTHER ORDERED that Donald J. Harman shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶66 IT IS FURTHER ORDERED that within 60 days of the date of this order, Donald J. Harman shall pay to the Office of Lawyer Regulation the cost of this proceeding, which are $7,662.28 as of May 13, 2019.

¶67 IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement. See SCR 22.29(4).