ATTORNEY FOR THE RESPONDENT
Penny L. Carey
Fishers, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
Seth T. Pruden, Staff Attorney
John P. Higgins, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**
Jul 17 2013, 11:03 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 29S00-1201-DI-8

IN THE MATTER OF:

JOSEPH STORK SMITH,

*Respondent.*

Attorney Discipline Action
Hearing Officer Bruce Pennamped

**July 17, 2013**

**Per Curiam.**

We find that Respondent, Joseph Stork Smith, engaged in attorney misconduct by, among other things, revealing confidential information relating to his representation of a former client by publishing the information in a book for personal gain. For this misconduct, we conclude that Respondent should be disbarred.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action." Respondent's 1976 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Background

In 2010, Respondent authored a book purporting to be a true autobiographical account of Respondent's relationship from roughly 1990 through 2010 with a former client ("FC"), who was active in politics and at one point held a high-level job in the federal government. A sexual relationship between FC and Respondent began around 1990 and continued until about 2001. After their sexual relationship began, Respondent represented FC on various legal matters during these years. They maintained a personal relationship for a time thereafter. Respondent's professed motivation for writing the book was at least in part to recoup legal fees FC owed him and money FC had obtained from him over the years.

The Commission filed a "Verified Complaint for Disciplinary Action" against Respondent on January 9, 2012, charging Respondent with violating these Rules of Professional Conduct,[1] which prohibit the following misconduct:

1.7: Representing a client when there is a concurrent conflict of interest due to the lawyer's personal interests without obtaining the client's informed, written consent.

1.9(c)(1): Using information relating to the representation to the disadvantage of a former client except as rules permit or require, or when information becomes generally known.

1.9(c)(2): Revealing information relating to the representation of a former client except as rules permit or require.

7.1: Making a false or misleading communication about the lawyer or the lawyer's services.

8.4(c): Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

8.4(e): Stating or implying an ability to influence improperly a government agency or official.

The hearing officer filed his "Report of Findings of Fact, Conclusions of Law, without Recommendation Concerning the Disposition of the Case or Discipline to be Imposed"

---

[1] Two additional rule violations were charged, which we conclude are not supported by sufficient evidence.

("Report") on February 28, 2013. Neither party filed a petition for review of the hearing officer's report, although the Commission filed a brief on sanctions. When neither party challenges the findings of the hearing officer, "we accept and adopt those findings but reserve final judgment as to misconduct and sanction." Matter of Levy, 726 N.E.2d 1257, 1258 (Ind. 2000). Having considered the hearing officer's conclusions of law, we approve and adopt them as well.

## Discussion

Improper disclosures in the book (Rule 1.9(c)(1) and (2)). Respondent admits that portions of the book contain information about events involving his representation of FC. The book describes several criminal cases against FC in which Respondent represented FC. Respondent revealed such details as his negotiations regarding bail and plea agreements, conversations with a police detective, conversations with FC pertaining to the charges and her incarceration, FC's mental and physical state, the source of funds for restitution, discussions about his fees, and his personal thoughts about FC and about the matters. The book revealed that Respondent provided his legal files pertaining to his representation of FC in criminal cases to FC's husband at one point.

Respondent also represented FC for the purpose of reviewing a divorce agreement. In the book, Respondent revealed details of his conversations with FC, details about her marriage, and his personal opinions and thoughts about FC's conduct.

Respondent asserts that FC gave her consent to the disclosures of confidences when she said, in response to his statement that he might write a book about her, "That is a great idea! Write a book and make me famous!" The hearing officer concluded, however, that Respondent has not demonstrated that FC gave the level of informed written consent necessary to permit Respondent to disclose and publish the confidential information in the book.

Respondent argues that the disclosures related to his representation of FC were permitted under Prof. Cond. R. 1.6(b)(3), which states:

3

> A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to **prevent, mitigate or rectify substantial injury** to the financial interests or property of another that is reasonably certain to result or has resulted from **the client's commission** of a crime or **fraud** in furtherance of which the client **has used the lawyer's services**.

(Emphasis added.)

Respondent asserts that he believed FC had provided false information about her criminal history and other matters to get her job with the federal government. Respondent admits however, that he has no evidence that any document was falsified by FC. The hearing officer found no credible evidence that FC's employer relied on a false or misleading security application. In addition, Respondent's disclosure of the alleged fraud years after FC left her employment would not serve to "rectify" or "mitigate" the alleged fraud, and there was no evidence that FC's employment caused substantial injury to the financial interests or property of another or that FC used Respondent's services "in furtherance" of any fraud. The hearing officer concluded that Respondent's purpose in seeking to market the book arose from Respondent's desire to recoup financial losses allegedly caused by FC rather than to prevent, mitigate or rectify her alleged fraud.

<u>Conflict of Interest (Prof. Cond. R. 1.7)</u>. From 1990 through 2001, Respondent represented FC on numerous legal matters and maintained a personal relationship with her. During this period, Respondent advanced money, made personal loans, permitted his credit card to be used, and provided personal assistance to FC. Although FC owed Respondent legal fees, he continued to lend her additional funds and to provide additional services. Respondent grew increasingly frustrated with FC over her lack of payments but continued to represent her in order to increase his opportunity to be repaid. Respondent did not consider whether their personal relationship, including FC's financial reliance on Respondent, would materially limit his ability to represent her professionally. The hearing officer concluded that Respondent's actions created a conflict between his own interests, the interests of third persons, and his duty of loyalty to his then-client, FC.

4

Statements regarding improper influence (Prof. Cond. R. 8.4(e)). Respondent revealed in the book that he had a conversation with a person at the Marion County Bail Commissioner's Project regarding the bail of FC. The book stated that Respondent "dropped the names" of several people, including a person he knew who used to work for the Project and a criminal court judge who was a friend of his. The hearing officer concluded that Respondent's purpose in doing so was to imply the ability to influence improperly the Bail Commissioner Project agent by claiming some influence due to friendships with certain public officials and judges, in violation of Prof. Cond. R. 8.4(e).

False statements (Prof. Cond. R. 8.4(c)). In the book, Respondent stated that he had conversations with a leader of a state political party during a time when FC was employed as a fund-raiser by the party. Respondent stated, among other things, that the leader told him that FC had lied regarding political contributions she had claimed to receive and that the leader hired FC due to fear that she would make unfounded accusations against him. At the hearing in this case, the leader denied making these statements to Respondent. The hearing officer found the leader's testimony to be credible on this disputed issue of fact and concluded that Respondent knowingly made false statements in the book in violation of Prof. Cond. R. 8.4(c).

False claim regarding his qualifications (Prof. Cond. R. 7.1). Respondent stated in the book that he is a "Certified Domestic Law Mediator." Alternative Dispute Resolution Rule 2.3 permits civil and domestic mediators to be "registered" with the Indiana Supreme Court Commission for Continuing Legal Education, and mediators must meet certain requirements to be registered. There is no "certification" provision. Respondent admitted he has never been registered as a mediator and never acted as a mediator in his career. The hearing officer found that Respondent violated Prof. Cond. R. 7.1 by making misleading statements about his qualifications in the book.

Aggravating and mitigating facts. The hearing officer found the following facts in aggravation: (1) Respondent improperly revealed information about a former client for self-serving reasons; (2) Respondent engaged in multiple offenses; (3) Respondent testified falsely in this disciplinary matter; (4) Respondent refused to acknowledge the wrongfulness of his conduct;

5

(5) Respondent had been a lawyer for approximately 35 years when he published the book and thus knew or should have known his obligations regarding safeguarding client information; and (6) Respondent's conduct in revealing information about his former client's legal matters was not an impulsive or sudden act; rather, it was planned and executed over an extended period of time. The hearing officer found the following facts in mitigation: (1) Respondent has no prior discipline; and (2) Respondent ceased efforts to sell the book when the verified complaint was served.

Discipline. The American Bar Association's *Standards for Imposing Lawyer Sanctions* (as amended in 1992) ("Standards") provide the following guidance misconduct warranting disbarment:

> **Disbarment** is generally appropriate when a lawyer, **with the intent to benefit the lawyer** or another, knowingly reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

Standard 4.21 (emphasis added).

> **Disbarment** is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional **with the intent to obtain a benefit for the lawyer** or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

Standard 7.1 (emphasis added).

In the book, Respondent revealed personal and sensitive information about FC that was obtained in confidence as her attorney, and its revelation had the potential of causing her public embarrassment and other injury, such as impairment of her employment opportunities. Respondent's selfish motivation in deliberately attempting to reveal this confidential information to a wide audience for monetary gain, his false statements in the book and in this disciplinary matter, and his lack of any remorse lead us to conclude that that disbarment is appropriate for Respondent's misconduct.

## Conclusion

The Court concludes that Respondent violated the Indiana Professional Conduct Rules by, among other things, revealing confidential, sensitive information relating to his representation of a former client by publishing it in a book for personal gain and by engaging in conduct involving dishonesty or misrepresentation.

For Respondent's professional misconduct, the Court disbars Respondent from the practice of law in this state effective August 28, 2013. Respondent shall not undertake any new legal matters between service of this order and the effective date of the disbarment, and Respondent shall fulfill all the duties of a disbarred attorney under Admission and Discipline Rule 23(26).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

All Justices concur.

7