# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2022AP35-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Roger G. Merry, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, v. Roger G. Merry, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST MERRY

| | |
|---|---|
| OPINION FILED: | April 24, 2024 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per curiam. ZIEGLER, C.J., filed a concurring opinion, in which REBECCA GRASSL BRADLEY, HAGEDORN, KAROFSKY, and PROTASIEWICZ, JJ., joined. | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

**2024 WI 16**

No. 2022AP35-D

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

| STATE OF WISCONSIN | : | IN SUPREME COURT |
|---|---|---|

**In the Matter of Disciplinary Proceedings Against Roger G. Merry, Attorney at Law:**

**Office of Lawyer Regulation,**

       **Complainant,**

  **v.**

**Roger G. Merry,**

       **Respondent.**

**FILED**

**APR 24, 2024**

Samuel A. Christensen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. We review the report of Referee Edward E. Leineweber, issued after an evidentiary hearing, in which he concludes that Attorney Roger G. Merry committed two counts of professional misconduct as alleged by the Office of Lawyer Regulation (OLR). Referee Leineweber recommends that the court suspend Attorney Merry's license for a period of one year and

that we order Attorney Merry to pay the full costs of this disciplinary proceeding.

¶2 Neither party has appealed from the referee's report so we review this matter pursuant to Supreme Court Rule (SCR) 22.17(2).[1] After completing our review, we approve the referee's findings and conclusions. With respect to the discipline to be imposed, we consider the recommended one-year suspension to be too light a sanction. Revocation is in order for Attorney Merry's egregious misconduct. We order Attorney Merry to pay the full costs of this proceeding. We accede to the OLR's conclusion that restitution is not warranted.

¶3 Attorney Merry was admitted to practice law in Wisconsin in 1981. He has a lengthy disciplinary history. In 1990, Attorney Merry was privately reprimanded for engaging in a conflict of interest. Private Reprimand, No. 1990-26.[2] In 1993, Attorney Merry was publicly reprimanded for client fund and trust account violations, as well as making at least six intentional misrepresentations to the former Board of Attorneys Professional Responsibility, the OLR's predecessor. Public

---

[1] SCR 22.17(2) provides: "If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter."

[2] Electronic version not available.

2

Reprimand of Roger G. Merry, No. 1993-3.[3] In 1994, Attorney Merry was privately reprimanded for failing to keep a client reasonably informed about the status of a matter. Private Reprimand, No. 1994-8.[4] In 1999, Attorney Merry was publicly reprimanded for engaging in a conflict of interest. Public Reprimand of Roger G. Merry, No. 1999-1.[5] In 2008, Attorney Merry was publicly reprimanded for making a false statement to a tribunal; offering false evidence; and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Public Reprimand of Roger G. Merry, No. 2008-9.[6] Attorney Merry's law license is also subject to administrative suspensions for failure to pay Wisconsin State Bar dues and failure to file a trust account certification.

¶4 This disciplinary matter concerns Attorney Merry's publication of a book regarding his former client, M.S. This matter began with three counts, one of which the referee dismissed before the evidentiary hearing at the OLR's request.

---

[3] Electronic version available at https://compendium.wicourts.gov/app/51417a2b8d566b1c706f83303424783b34565c38.continue.

[4] Electronic version not available.

[5] Electronic version available at https://compendium.wicourts.gov/app/12575b0f2a8b1a496c420a41151a8e486b127922.continue.

[6] Electronic version available at https://compendium.wicourts.gov/app/334e1203175d7659478d85166513148f3883286a.continue.

The referee's report and the exhibits received at the evidentiary hearing may be summarized as follows.

¶5 Attorney Merry served as M.S.'s defense attorney in her 2006 trial on charges including first-degree intentional homicide. M.S. was convicted and sentenced and remains in prison to this day.

¶6 In November 2013, Attorney Merry sent M.S. a letter, received into evidence at the evidentiary hearing, stating the following:

> There remains a debt for my representation of you of approximately $19,000.00. I am willing to call it even if you would sign a release so the public defender could give me their copy of the transcript, and also sign a waiver of attorney/client privilege.
>
> The reason I am willing to write off the bill in exchange for the above, is I am planning on publishing a book about the case.
>
> If you are unwilling to sign these two documents, I will have no choice but to sue your grandparents for the balance of the fee. Accordingly, if this meets with your approval, please sign both originals before a witness, have the witness sign it, and return it to me in the enclosed, self-addressed stamped envelope. The extra copies are for your file.

¶7 Attorney Merry enclosed with this letter an "Authorization for Release of Transcripts" from the State Public Defender's Office (SPD) to him, as well as a "Waiver of Attorney-Client Privilege," which called for M.S. to "waive all attorney-client privilege" and to "authorize my former attorney, Roger Merry, to publish any and all information he has regarding me, including, but not limited to, everything I have said to him

4

which might have been privileged by the attorney-client relationship." M.S. did not sign either document.

¶8 In March 2015, Attorney Merry sent the SPD's Office a letter, received into evidence at the evidentiary hearing, stating that he knew the SPD's Office considered transcripts to be the property of its clients; that he wanted a copy of M.S.'s trial transcripts; that she "did not consent to give me a copy since I obtained a judgment against her in [circuit court] for $18,000"; and that he was "hoping to execute the judgment and obtain a copy or the original of the transcripts." He asked where the transcripts might be, and whether the SPD's Office "had a preferred method of delivery to me pursuant to an execution." Attorney Merry copied M.S. on this letter.

¶9 The SPD's Office responded with a letter, received into evidence at the evidentiary hearing, informing Attorney Merry that it could not send documents from M.S.'s file without her permission.

¶10 Ultimately, in August 2020, Attorney Merry self-published a book about his representation of M.S. The book was available at public libraries and for purchase at a local book store and an online book retailer. Attorney Merry used information relating to his representation of M.S. to write the book. To provide details about the case in the book, Attorney Merry drew from his own review of court records located at the circuit courthouse, as well as from his own recollection of events, chambers discussions or sidebars, and discussions with the prosecutor, other attorneys, experts, or private

individuals——some of which might have occurred in the presence of others, but were not made in open court or in media coverage of the case at the time of the prosecution or its immediate aftermath.[7]

¶11 While the crime and the subsequent criminal prosecution had generated much publicity and discussion within the local community, it had generally subsided in the 14 years between those events and the publication of the book. Publication of the book revived public discussion of the events surrounding the crime and M.S.'s criminal prosecution.

¶12 M.S. suffered psychological harm from Attorney Merry's unsuccessful attempt to obtain her consent to his use of information concerning her case, as well as from his publication of the book about her case without her consent. The effects of the publication of the book included:

- damage to her relationships with her children, mother, siblings, and other family members who, previous to the publication of the book, were supportive of her;

- fear that the book would be available in the prison library and be read and discussed by prison staff and

---

[7] We note that excerpts of Attorney Merry's book were received into evidence at the evidentiary hearing. In the "Acknowledgements" section of his book, Attorney Merry wrote that "[a]ll matters in this book not derived from my own observation were taken from over five thousand pages of police reports and over two thousand five hundred pages of court reporter transcripts. All statements made by myself and others were made in anticipation of litigation."

fellow inmates, disrupting her relationships in the institution and undermining her well-being there;

- revelation of intimate private details of her personal and family history;

- reviving the stress of events from the commission of the crime through her trial, conviction, and sentencing;

- concern that the book would circulate in her home community and subject her children and family to social ostracism or abuse; and

- concern that the publication of the book would adversely affect her chances of eventually obtaining some form of relief through further court proceedings.

¶13 M.S. sought and received psychological treatment to address the emotional trauma caused by the contacts from Attorney Merry prior to publication and from circulation of the book in the community following the publication.

¶14 As pertinent here, the OLR's complaint alleges that:

- by using information to write and publish a book relating to his representation of M.S. that was not generally known, Attorney Merry violated SCR 20:1.9(c)(1) (Count 1); and

- by revealing in the book information relating to his representation of M.S. without her permission, Attorney Merry violated SCR 20:1.9(c)(2) (Count 2).

¶15 After holding an evidentiary hearing, the referee determined that the OLR had proven the misconduct alleged in both counts. The applicable Wisconsin Supreme Court Rule is SCR

7

20:1.9, "Duties to former clients." That rule reads, in pertinent part:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

¶16 In disputing the claimed SCR 20:1.9(c)(1) violation alleged in Count 1 before the referee, Attorney Merry argued that the information relating to the representation of M.S. that he relied upon in writing his book had become "generally known," and therefore fell outside the scope of the rule. The referee disagreed, noting that in Wisconsin Formal Ethics Opinion EF-20-02,[8] the State Bar Professional Ethics Committee explained that information is "generally known" for purposes of the rule only if widely recognized by members of the public in the relevant geographic area or within the former client's industry, profession, or trade. Id. at 6 (citing American Bar Association Standing Committee on Ethics and Professional Responsibility Formal Opinion 479). The referee wrote that "[a]t best the

---

[8] Full text of the Wisconsin Formal Ethics Opinion EF-20-02 is found here: https://www.wisbar.org/formembers/ethics/Ethics%20Opinions/EF-20-02%20Former%20Client%20Cross%20Examination%20-%20FINAL.pdf.

record in this matter might demonstrate that some of the personal information and detail [used by Attorney Merry in the book] was previously known by some others, but it does not support a finding that it was 'generally known.'"

¶17 The referee additionally rejected Attorney Merry's argument that his use of information relating to the representation of M.S. in his book did not "disadvantage" M.S., as is required for an SCR 20:1.9(c)(1) violation, because the book asserted her innocence of the underlying crimes, and because she allegedly suffered from mental health issues prior to publication of the book. The referee reasoned that, regardless of the particulars of Attorney Merry's account of the crimes in the book or the status of M.S.'s mental health prior to publication of the book, M.S. was disadvantaged by the psychological harm she suffered from his use of information relating to his representation of her.

¶18 The referee also rejected Attorney Merry's claim that he neither used nor revealed former-client confidences under SCR 20:1.9(c) in that the information related to his representation of M.S. in his book fell outside the scope of the attorney-client privilege. The referee disagreed, reasoning that an attorney's ethical duty to keep client confidences is broader than the evidentiary concern of attorney-client privilege.

¶19 Ultimately, the referee recommended that a one-year suspension of Attorney Merry's law license is merited based on his disciplinary history, the "egregious facts of this case,"

9

the precedent cited by OLR in its briefing to the referee, and the court's policy of progressive discipline.

¶20 Attorney Merry has not appealed the referee's report and recommendation. Accordingly, this court reviews the matter pursuant to SCR 22.17(2), which provides that if no appeal is timely filed, the court shall review the referee's report; adopt, reject, or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline.

¶21 When we review a referee's report, we will affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶22 Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law. Attorney Merry has not contested the facts found by the referee, and after reviewing the record ourselves, we find no basis in the record to conclude that the referee's findings are clearly erroneous. And for the reasons set forth below, we agree with the conclusions of law that flow from the referee's findings of

10

fact; namely, that the OLR established by clear and convincing evidence that Attorney Merry violated SCR 20:1.9(c)(1) and (2).

¶23 Our ethical rules make clear that attorneys owe a duty of confidentiality to both current and former clients. Supreme Court Rule 20:1.6, titled "Confidentiality," prohibits a lawyer from revealing information relating to the representation of a client unless the client gives informed consent, or the disclosures are impliedly authorized to carry out the representation, or the disclosures are authorized by SCR 20:1.6(b)[9] or (c).[10] Supreme Court Rule 20:1.9, quoted above,

---

[9] SCR 20:1.6(b) provides: "A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or in substantial injury to the financial interest or property of another."

[10] SCR 20:1.6(c) provides:

(c) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

(1) to prevent reasonably likely death or substantial bodily harm;

(2) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;

(3) to secure legal advice about the lawyer's conduct under these rules;

(4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the

11

extends this duty of confidentiality to former-clients' confidential information.

¶24 Supreme Court Rule 20:1.9(c)(1) governs an attorney's use of former clients' confidential information. It prohibits an attorney from using information relating to the representation of a former client "to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known."

¶25 Supreme Court Rule 20:1.9(c)(2) governs an attorney's revelation of a former client's confidential information. It prohibits an attorney from revealing information relating to the representation of a former client "except as these rules would permit or require with respect to a client."

¶26 Applying these provisions to the referee's well-supported factual findings, it is clear that Attorney Merry both revealed M.S.'s confidential information and used it to her disadvantage. He did the latter when he drafted a book containing M.S.'s confidences after she refused to assist him in

---

client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

(5) to comply with other law or a court order; or

(6) to detect and resolve conflicts of interest, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.

the endeavor, causing her psychological harm.  As for the former, he revealed the confidential information when he made the book available for public distribution and purchase.

¶27 It is further clear, based on the referee's well-supported factual findings, that none of the exceptions to the duty of former-client confidentiality apply.  M.S. never provided informed consent to Attorney Merry's use or revelation of her confidential information.  The "generally known" exception allowing use of confidential information does not apply given that, as found by the referee, the information used by Attorney Merry was not widely recognized by members of the public in the relevant geographical area.  See State Bar of Wisconsin Professional Ethics Committee, Formal Opinion EF-20-02 (June 25, 2020).  There has been no claim that any of the exceptions contained within SCR 20:1.6(b) and (c) apply.  See n.9-10.  And the referee correctly observed that the scope of information protected by the ethical duty of confidentiality is broader than that protected by the evidentiary doctrine of attorney-client privilege.[11]  Thus, Attorney Merry's insistence

---

[11] See SCR 20:1.6, cmt. 3, which explains, in pertinent part:

> The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client.  The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.  The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but

to the referee that he never violated the attorney-client privilege, even if true, does not prove that he satisfied his more robust ethical duty of confidentiality.

¶28 We therefore conclude that this record clearly establishes that Attorney Merry committed the charged misconduct. Our rules prohibited him from revealing M.S.'s confidential information or using it to her disadvantage (he did both) unless special circumstances apply (none do).

¶29 We turn now to the appropriate level of discipline to impose. Sources of guidance in determining appropriate sanctions include prior case law, the American Bar Association Standards for Imposing Lawyer Sanctions, and aggravating and mitigating factors. See Matter of Disciplinary Proc. Against DeLadurantey, 2023 WI 17, ¶52, 406 Wis. 2d 62, 985 N.W.2d 788.

¶30 Turning first to our own prior case law, we discover that the misconduct here is in a league of its own. In In re Disciplinary Proceedings Against Harman, 2001 WI 71, 244 Wis. 2d 438, 628 N.W.2d 351, we imposed a six-month suspension on an attorney for eight counts of misconduct that included revealing his client's medical records to a prosecutor who was prosecuting the client's cohabitant; we found a violation of the duty of client confidentiality even though the records had been publicly filed in a prior lawsuit. The attorney had been reprimanded three times previously. In In re Disciplinary Proceedings

---

also to all information relating to the representation, whatever its source.

14

Against Marick, 204 Wis. 2d 280, 554 N.W.2d 204 (1996), we imposed a nine-month suspension, as reciprocal discipline identical to that imposed by the Minnesota Supreme Court, for an attorney's use of confidential information concerning a client's proposed business acquisition to profit in the stock market. The attorney had no prior discipline. Finally, in In re Peshek, 2011 WI 47, 334 Wis.2d 373, 798 N.W.2d 879, 881, we imposed a 60-day suspension, as reciprocal discipline identical to that imposed by the Illinois Supreme Court, for an attorney's misconduct that included writing blog posts about her job that contained confidential information about her clients, whose identities she made inadequate efforts to conceal. The attorney had no prior discipline.

¶31 Here, Attorney Merry's conduct is considerably more serious, and his disciplinary history considerably more troubling, than that involved in Harman, Marick, and Peshek. It is bad indeed for an attorney to share a client's confidential medical information with another attorney (Harman), or to use a client's confidential business information to profit from a stock transaction (Marick), or to expose client confidences in personal blog posts (Peshek). But it is hard to imagine a more flagrant violation of 20:1.9(c)(1) and (2) than an attorney attempting to both publicize and profit from his client's confidences against the client's express wishes, as Attorney Merry did here. Such actions destroy the trust that is vital to the client-lawyer relationship and erode public confidence in the integrity of the legal profession. And Attorney Merry's

15

disciplinary history——which at five previous reprimands is more extensive than any of those involved in the above cases——clearly shows that his misbehavior was not a one-off incident. Considerably more discipline is therefore merited than what we imposed in Harman, Marick, and Peshek.

¶32 We turn next to the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"). Although these standards are in no way binding on this court, they provide helpful direction in assigning an appropriate sanction. Standard 4.21 applies here. It reads:

> 4.21 Disbarment is generally appropriate when a lawyer, with the intent to benefit the lawyer or another, knowingly reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

Annotated Standards for Imposing Lawyer Sanctions, Standard 4.21 (Ellyn S. Rosen ed., 2nd ed. 2019). The Annotation to ABA Standard 4.21 explains that disbarment is warranted when a lawyer "knowingly abuses" the client's trust and "knowingly reveals confidential client information improperly with the intent of achieving personal benefit and causing injury or potential injury to the client."

¶33 That is precisely what happened here. Attorney Merry improperly revealed M.S.'s confidential information and used it to her disadvantage, causing her extensive psychological harm—— all so that he could self-publish and sell a book devoted to his musings about the case in which he represented her. This was an intentional, self-benefitting violation of client confidences

16

within the meaning of the standard. We therefore make an initial determination that revocation[12] is the appropriate sanction in this case, subject to modification as a result of aggravating or mitigating factors.

¶34 Several aggravating factors are present. As noted above, Attorney Merry has a considerable disciplinary history. See ABA Standard 9.22(a). His motivation was selfish; he prioritized his interest in self-publishing a book above M.S.'s confidentiality interest and his ethical duty to protect it. See ABA Standard 9.22(b). He has not acknowledged the wrongful nature of his conduct, see ABA Standard 9.22(g); to the contrary, he portrayed himself to the referee as a past and present victim of an unfair disciplinary system and insisted that "I don't care what the likes of OLR or judges or lawyers say about me and my ethics because they're wrong. It's motivated for improper purposes, and it doesn't add to the discussion. And it, in fact, disgraces the practice of law." M.S., as an inmate, was a vulnerable victim. See ABA Standard 9.22(h). Finally, Attorney Merry had decades of experience in the practice of law, and thus should have known better than to act as he did. See ABA Standard 9.22(i).

¶35 There is little on the mitigating side of the scale. Attorney Merry appears to have generally cooperated with the OLR during this disciplinary process. See ABA Standard 9.32(e).

---

[12] The ABA Standards use the term "disbarment"; Wisconsin uses the term "revocation." See SCR 21.16(1m)(a).

17

And his disciplinary history is relatively remote in time. See ABA Standard 9.32(m).

¶36 Although there is no mathematical formula for weighing these factors, we conclude that the many aggravating factors outweigh the few mitigating factors present in this case. We therefore conclude that revocation is appropriate under the facts of this case.

¶37 We note that this result is consistent with that reached in an out-of-state case with reasonably analogous facts. In In re Smith, 991 N.E.2d 106 (Ind. 2013), the Indiana Supreme Court disbarred an attorney who wrote a book that purported to be a true account of his personal and professional relationship with a former client, who was active in politics and at one point held a high-level job in the federal government. See id. at 107. The attorney's professed motivation for writing the book was at least in part to recoup legal fees the former client owed him and money the former client had obtained from him over the years. Id. The Indiana Supreme Court determined that the attorney committed multiple ethical violations in writing the book, including the improper disclosure of details of his representation of the former client. The court wrote:

> In the book, Respondent revealed personal and sensitive information about [the former client] that was obtained in confidence as her attorney, and its revelation had the potential of causing her public embarrassment and other injury, such as impairment of her employment opportunities. Respondent's selfish motivation in deliberately attempting to reveal this confidential information to a wide audience for monetary gain, his false statements in the book and in

18

> this disciplinary matter, and his lack of any remorse lead us to conclude that that disbarment is appropriate for Respondent's misconduct.

The court cited ABA Standard 4.21, discussed above, as support for this result. Id. at 110.

¶38 We acknowledge that all of Attorney Merry's previous disciplinary matters resulted in reprimands, not license suspensions. Under different facts, a suspension, rather than revocation, might be considered a reasonable next step in the progressive discipline process. But when the circumstances have called for it, we have revoked an attorney's law license for misconduct even where (quite unlike here) the attorney had no prior disciplinary history. In In re Disciplinary Proceedings Against Wright, 180 Wis. 2d 492, 509 N.W.2d 290 (1994), for example, we concluded that an attorney's conversion of client funds warranted license revocation, even though the attorney had never been disciplined before. Here, Attorney Merry's misconduct was arguably far more serious than that involved in Wright: client funds can be replaced, but the harm caused by Attorney Merry's improper use and very public revelation of M.S.'s confidences cannot be undone; that bell cannot be unrung. We therefore impose revocation as the next disciplinary step for Attorney Merry.

¶39 We turn now to the issue of costs, which total $16,853.92 as of December 20, 2023. Attorney Merry does not dispute them. As is our normal practice, we deem it appropriate to impose the full costs of this proceeding on him. See SCR 22.24(1m).

19

¶40 We note that the OLR does not seek restitution. None is ordered.

¶41 Finally, we note that, on August 3, 2022, several months after the OLR filed its disciplinary complaint against him, Attorney Merry filed a petition to voluntarily surrender his law license. The court has not yet taken action on this petition. We hereby deny it. See In re Disciplinary Proceedings Against Snyder, 127 Wis. 2d 446, 380 N.W.2d 367 (1986) (voluntary resignation is an inappropriate disposition of a disciplinary proceeding).

¶42 IT IS ORDERED that the license of Roger G. Merry is revoked, effective the date of this order.

¶43 IT IS FURTHER ORDERED that Roger G. Merry's August 3, 2022 petition to voluntarily surrender his law license is denied.

¶44 IT IS FURTHER ORDERED that, within 60 days of the date of this order, Roger G. Merry must pay to the Office of Lawyer Regulation the costs of this proceeding totaling $16,853.92.

¶45 IT IS FURTHER ORDERED that Roger G. Merry shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.

¶46 IT IS FURTHER ORDERED that the administrative suspensions of Roger G. Merry to practice law in Wisconsin for failure to pay Wisconsin State Bar dues and failure to file a trust account certification will remain in effect until each

reason for the administrative suspension has been rectified, pursuant to SCR 22.28(1).

¶47 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Merry's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶48 I am authorized to state that Justices REBECCA GRASSL BRADLEY, BRIAN HAGEDORN, JILL J. KAROFSKY, and JANET C. PROTASIEWICZ join this concurrence.

1